**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**

| | |
|---|---|
| **ANGELA SMITH, on behalf of herself AND ALL OTHERS SIMILARLY SITUATED.**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**CIGARETTE STORE, LLC, SMOKER FRIENDLY, ALLIANCE HEMP COMPANY LLC, BIO BLAZE PARTNERS LLC, MYSTIC LABS, GLOBAL WIDGET, SAVAGE ENTERPRISES, SAVAGE ELIQUIDS, HERBAL PHARM CORP,DANK-LITE, PACKAGE BROS INC, DELTA BANG, DELTA BANG PRODUCTS, BIOMINERALES PHARMA LLC, HEMPFIRE FARMS, PHARMA CBD, RIGHTFUL VENTURES, INC, PHARMLAS SD, VERDE LABS, ACCURATE TEST LABS, JOHN DOES 1-20.**<br><br>**Defendants** | **Case No. 4:24-cv-00469**<br><br>**Complaint** |

**AMENDED VERIFIED COMPLAINT**

Plaintiff, **ANGELA SMITH**, alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

**JURISDICTION AND VENUE**

1. This is an action brought under the Arkansas Drug Dealer Liability Act, fraud, breach of warranty, rescission, and unjust enrichment. This Court has subject matter jurisdiction. No federal claims are brought, and the damages sought do not exceed five million dollars.

2. Venue is proper because Plaintiff, a resident of Jefferson County, purchased the vape pen products from **CIGARETTE STORE, LLC, a Colorado Corporation,** whose members are Terry Gallagher Jr., President, Phillip L. Harbison, Vice President, Ben F Chaney, Assistant Secretary, Michael Gallagher, Secretary, Daniel T. Gallagher, Treasurer, and Mary Szarmoder, Director (dba **SMOKER FRIENDLY**, store #1107) in Pulaski County, Arkansas which they purchased from **SMOKER FRIENDLY**, an Arkansas corporation with a principal place of business in Jefferson County.

3. The ALLIANCE product, Sharklato D8 vape was manufactured by **ALLIANCE HEMP COMPANY LLC**, an inactive Oklahoma limited liability company, whose members are **DERIK JULIAN** and **RYAN HAYDEN**. Julian and Hayden knew the Product was illegal, yet they shipped the product into Arkansas anyway.

4. The MYSTIC LABS product, Wicked Grapefruit, was manufactured and distributed by **BIO BLAZE PARTNERS LLC,** (dba **GLOBAL WIDGET LLC and Mystic Labs**), a Florida Limited Liability Company, whose members are **DONALD BIEDRZYCKI JR., KEVIN COLLINS, JAMES BISHOP, AND GINA BONGIOVANNI**, who knew their product was illegal, yet shipped the product into Arkansas anyway.

5. **SAVAGE ENTERPRISES** is a Wyoming corporation also licensed in the state of Arkansas, with dba of **SAVAGE ELIQUID COPORATION**. Their members are **CHRISTOPHER WHEELER, MATT WINTERS, JON DOUGHERTY, MICHAEL BULEY, MATTHEW MONTESANO AND BRITTNEY HAWKINS**. These parties knew that their Extrax Banana Runtz vape Product was illegal, yet they shipped the product into Arkansas anyway.

6. **HERBAL PHARM CORP,** a Kentucky Corporation (dba **DANK-LITE) AND**

**PACKAGE BROS INC,** a Florida Corporation, whose members are **NATHAN WAX, SCOTT R SMITH, RUSTAM GINDULLIN, AND JACKSON FERGUSON** knew their Delta 8 Tincture was illegal, yet they shipped the product into Arkansas anyway.

7. **BIO MINERALES PHARMA LLC**, a Florida corporation (dba **DELTA BANG**), whose members are **DAVID SHAW AND ADRIANA SHAW**, knew their Delta 8 Grandaddy Purple vape was illegal, yet they shipped it into Arkansas anyway.

8. **RIGHTFUL VENTURES INC**, a North Carolina corporation (dba Pharma CBD), whose members are **AUSTIN FISHER AND CHRISTINA FISHER**, knew their **Pharma CBD Blue Dream** vape was illegal, yet they shipped it into Arkansas anyway.

9. **JOHN DOE 1**, is a laboratory organized under the laws of the State of California who falsely certified a Product contained a legal amount of D9 THC, whose members are sued as **John Does 1-5**. The fraudulent COA issued by John Doe 1 **(The Lab)**. These persons are referred to as the Lab Defendants.

10. **JOHN DOE 6** is another laboratory organized under the laws of the State of California who falsely certified a Product contained a legal amount of D9 THC, whose members are sued as **John Does 6-10**. The fraudulent COA issued by John Doe 6 **(The Lab)**. These persons are referred to as the Lab Defendants.

11. **JOHN DOE 11** is another laboratory organized under the laws of the State of Florida who falsely certified a Product contained a legal amount of D9 THC, whose members are sued as **John Does 11-15**. The fraudulent COA issued by John Doe 11 **(The Lab)**. These persons are referred to as the Lab Defendants.

12. Each Defendant has established "minimum contacts" with Arkansas such that the assertion of jurisdiction is fair and reasonable under constitutional standards. Here are some key

factors: Each Defendant has purposefully availed themselves of the privileges of conducting activities within Arkansas by doing business, entering into contracts, or deliberately interacting with residents of Arkansas. Indeed, **ALLIANCE HEMP COMPANY, LLC**, and **SAVAGE ENTERPRISES** are or were registered to do business in Arkansas. If the defendant voluntarily took actions within the state that would subject them to its laws, it strengthens the case for jurisdiction. Each Defendant's publication and distribution of D8 vape pens within the State of Arkansas caused Plaintiff and the Class harm, in the State of Arkansas, so that this Court has specific personal jurisdiction. Thus, there is direct connection between each Defendant's actions in the state and the legal dispute enhances the likelihood of jurisdiction. Relevant evidence and witnesses exist in Arkansas. Each Defendant's actions were foreseeable to impact the forum state, it may support jurisdiction. Unilateral actions by the Plaintiff alone, such as purchasing a product or service from the Defendant, may not be sufficient. Venue is proper in this County because each retail Defendant sells the product in this County and some of the actions giving rise to the claims occurred within this county.

## GENERAL ALLEGATIONS OF FACT

13. All of the Products that Plaintiff purchased were purchased from **SMOKER FRIENDLY**, 8414 Geyer Springs Rd, #2, Little Rock, AR, 72209, on 12/5/2023.

14. Plaintiff purchased a vape from **SMOKER FRIENDLY** manufactured by Alliance labeled as Sharklato (the Product), and tested by the Lab from **SMOKER FRIENDLY**.

15. Plaintiff purchased a vape from **SMOKER FRIENDLY** manufactured by Bio Blaze Partners labeled Wicked Grapefruit (the Product), and tested by the Lab from **SMOKER FRIENDLY**.

16. Plaintiff purchased a vape from **SMOKER FRIENDLY** manufactured by Savage

Enterprises labeled as Banana Runtz (the Product), and tested by the Lab from **SMOKER FRIENDLY**.

17. Plaintiff purchased a concentrate from **SMOKER FRIENDLY** manufactured by Herbal Pharm Corp and Package Bros Inc labeled as Delta 8 Tincture (the Product), and tested by the Lab from **SMOKER FRIENDLY**.

18. Plaintiff purchased a vape from **SMOKER FRIENDLY** manufactured by BioMinerales Pharma labeled as Grand Daddy Purple (the Product), and tested by the Lab from **SMOKER FRIENDLY**.

19. Plaintiff purchased a vape from **SMOKER FRIENDLY** manufactured by Rightful Ventures Inc labeled as Blue Dream (the Product), and tested by the Lab from **SMOKER FRIENDLY**.

20. Each Defendant manufactures, tests, distributes, markets, or sells D8 Vape pens or concentrates in Pulaski County, Arkansas warranted as compliant with the Hemp Farming Act of 2018, meaning that these products contain no more than hemp-derived .3% D9 THC by dry weight. This representation is false.

21. Upon information and belief, one or more of the Manufacturers and Distributors of **ALLIANCE HEMP COMPANY, LLC, BIO BLAZE PARTNERS LLC, SAVAGE ENTERPRISES, HERBAL PHARM CORP, BIO MINERALES PHARMA LLC, AND RIGHTFUL VENTURES INC,** sued as John Does 1-20, all had received lab tests that indicated that their respective products contained THC or more than .3% D9 THC dry weight and was therefore a Schedule I controlled substance, marijuana. Instead of demanding that the product be compliant with federal law, these Defendants lab shopped, until each found a lab willing to issue a false COA'S, like the Lab Defendant in this case.

22. The representations are misleading because they give consumers like the Plaintiff the impression the Product contains a legal amount and type of D9 ingredients, but the Product contains an illegal amount of D9, as well as synthetic D9. Alliance Hemp Company LLC, Bio Blaze Partners LLC, Savage Enterprises, Herbal Pharm Corp, Bio Minerales Pharma LLC, and Rightful Ventures Inc manufactures vape products or concentrates like the products Plaintiff purchased and others and colludes with various laboratories such as the Lab to produce fraudulent certificates of analysis (COA's) that show a D9 THC percentage below .3% D9 THC and typically show none detected (ND). However, these product COA's are false, and the actual D9 THC is far above the allowable D9 THC limits. Further, Alliance Hemp Company LLC, Bio Blaze Partners LLC, Savage Enterprises, Herbal Pharm Corp, Bio Minerales Pharma LLC, and Rightful Ventures Inc products have been tested with various laboratories with similar results, in that they are substantially over the .3% D9 THC maximum.

23. In 2023, Smith purchased several D8 vapes and one concentrate from Smoker Friendly manufactured by Alliance Hemp Company LLC, Bio Blaze Partners LLC, Savage Enterprises, Herbal Pharm Corp, Bio Minerales Pharma LLC, and Rightful Ventures Inc and falsely certified by the Lab as having a legal percentage of THC to address anxiety.

24. Before using the products, Plaintiff had the Products tested, and the tests were positive for D9 THC.

25. Based in Oklahoma, Alliance was founded by co-owners Julian and Hayden with the vision of bringing innovation to the counter-culture space. Alliance alleges it has been committed to improving the community it serves by providing superior, consumer-centered and cost-effective products that are thoroughly lab tested with quality assurance, consistency, and traceability. Using its website, About Alliance Hemp Co - Hemp CBD Products Grown in

Southern Oregon, Alliance Hemp Company LLC sells delta-10-THC cartridges, disposables and tinctures, delta-8-THC-infused shots, vape cartridges, concentrates, disposables, edibles, Delta-8-THC-infused hemp flower, pods, tinctures, THC-O, HHC, THC-V and THC-P products over the internet for delivery in Arkansas and across the nation. Each Defendant has done business in the state of Arkansas and hundreds of thousands of dollars of its product has been sold.

26. Defendant Alliance Hemp Company LLC manufactured the product Plaintiff purchased from Jordan's in Izard and Jackson County, Arkansas, after buying the product from a Distributor, who is named as John Doe 2.

27. Alliance Hemp Company LLC falsely stated on its website that Delta-8 THC is an isomer of CBD, is derived from hemp and CBD, and is a psychoactive cannabinoid that packs several benefits. The unique cannabinoid is different, chemically, from its close relative, Delta-9 THC. It only differs from a few atomic bonds. However, it occurs in small concentrations and is Hemp derived making it Hemp compliant because it contains less than 0.3% of Delta 9 THC as required under the 2018 Farm Bill.

28. Acting at Alliance's direction, the Lab Defendant produced a certificate that falsely reflected that the product Plaintiff purchased contained legal amounts of D9 THC.

29. Based in Tampa, Florida, Bio Blaze Partners LLC manufactures and distributes the Mystic Labs line of products. On its website mysticlabsd8.com, they offer vapes, gummies, vape juice, oil, pain rubs, and Kratom products. On their website, they state that they are an industry leading manufacturer of premium hemp derived products, and that they formulate and manufacture D8 products that you can trust. They state that their dedication to quality happens in-house, where they formulate, manufacture, package, and ship all of their products in the United States from Tampa Florida. They further state that their products are legal, potent, and pure and

that they have a dedicated quality control team and quality assurance managers. They further state that "Our commitment to quality certifies that every product we manufacture meets our potency and safety standards while being Federally compliant." They further state that they have established processes for in-process testing, quality control checks, and lab test certifications. Under the heading of "Products You Can Trust", they state that "we thoroughly lab test our products in-house by implementing multiple QC checkpoints to ensure every batch meets our quality, potency, and safety standards." "We even partner with an ISO-certified, third-party lab testing facility to verify the contents of our products and certify that they are federally legal."

30. Defendant Bio Blaze Partners LLC manufactured and distributed the Wicked Grapefruit product plaintiff purchased from Smoker Friendly in Pulaski County, Arkansas.

31. Defendant Bio Blaze Partners LLC falsely states on their mysticlabsd8.com website that they thoroughly lab test their products in-house for potency.

32. Although Mystic Labs has a section on their website that ostensibly allows a person to look up lab results for their Wicked Grapefruit product, they require a person to enter a batch number. Batch numbers are not printed on their Wicked Grapefruit product and are not otherwise supplied to consumers.

33. Bio Blaze Partners LLC falsified its own in-house thorough lab tests for potency regarding the product Plaintiff purchased and falsely stated the product contained legal amounts of D9 THC.

34. Acting at Bio Blaze Partners LLC direction, the Lab Defendant produced a certificate that falsely reflected that the product Plaintiff purchased contained legal amounts of D9 THC.

35. Savage Enterprises, based in Wyoming, states that their products are lab tested for

authenticity and purity. They further state that they sell only the absolute most premium products, and that their products are third-party lab tested and certified to ensure customers receive the highest quality products.

36. Savage Enterprises manufactured the Banana Runtz Product Plaintiff purchased from Smokers Friendly in Pulaski County, Arkansas.

37. Savage Enterprises and the Lab Defendant produced a certificate that falsely reflected that the product Plaintiff purchased contained legal amounts of D9 THC.

38. Savage Enterprises failed to certify that the product Plaintiff purchased contained legal amounts of D9 THC

39. Bio Minerales Pharma LLC is based in Florida and is a member of Delta Bang Products and is also a co-packer and hardware supplier. Bio Minerales Pharma LLC states that they are Current Good Manufacturing Practices (cGMP) compliant and that their operations meet the highest standards set by the FDA for manufacturing, testing, and quality assurance. They advertise the cGMP compliance on their website, www.biomineralespharma.com. The deltabang.com website shows vapes, edibles and pre-rolls.

40. Bio Minerales Pharma LLC manufactured the Grand Daddy Purple Product that the Plaintiff purchased from Smoker Friendly in Pulaski County, Arkansas.

41. Bio Minerales Pharma LLC failed to follow cGMP processes and did not ensure that the Product that they manufactured and sold was compliant containing no more than .3% D9 THC by dry weight.

42. Bio Minerales Pharma LLC and the defendant Lab produced a testing certificate that falsely reflected that the product Plaintiff purchased contained legal amounts of D9 THC.

43. RIGHTFUL VENTURES, INC. is based in North Carolina and its members are Austin Fisher and Christina Fisher. They operate the website PharmaCBD.com. This website advertises edibles, gummies, hemp flower, pre-rolls, delta 8 THC flower, tinctures, topicals, capsules, vape products, and Kratom. Their website states that they are CBD distributors that focus on providing quality products. The website further states that their COA's "proves that the potency and purity claims of the company are true." In its frequently asked questions section (FAQ), they state that their D8 product is not synthetic, "Nope. It's not synthetic. We promise." In many instances in the FAQ section, they state that their products are not synthetic. In their third-party testing section, they discuss manipulating lab results for bias. Stating that they use a third-party lab making their test results "accurate, and non-negotiable." They further state "we test within our lab and with a third-party lab for every single batch…"

44. Rightul Ventures, Inc. manufactured, in-house tested, and distributed the Blue Dream vape product that Plaintiff purchased from Smoker Friendly.

45. Rightful Ventures, Inc. falsified its own in-house testing records to indicate that their Product had a legal amount of D-9 THC and that their product was not synthetic.

46. Rightful Ventures, Inc. and the defendant Lab produced a testing certificate that falsely reflected that the product Plaintiff purchased contained legal amounts of D9 THC.

47. Delta-8 is a cannabis compound that has become popular because of its similarity to Delta-9 THC, the main compound in cannabis that gets one high, causing euphoria, happiness, and sedation.

48. Delta-8 is short for its scientific name, delta-8-tetrahydrocannabinol, or simply just delta-8 THC. Some people just call it "D-8." Delta-8 THC can cause effects similar to regular

delta-9 THC, but they will be much less potent in the same amount.

49. Delta 8 THC is a natural cannabis compound that occurs in both marijuana and hemp. However, its presence is usually so little that one needs a massive amount of plant material to procure any significant quantity of this compound.

50. Delta-8, like Delta-9 (regular THC), binds to the body's endocannabinoid system, which causes one to feel high. Chemically speaking, Delta-8 and Delta-9 are similar in that they both have a double bond in their structures. D8 and D9 THCs are chemically different in the placement of the double bond. Both cannabinoids have a chain of carbon atoms, but delta-8 has the double bond on the eighth carbon, whereas Delta-9 has it on the ninth.

51. Delta-8 binds to the endocannabinoid system in a slightly different manner because of the location of its double bond. This reason makes Delta-8 much less potent than regular THC. So, in order to obtain D8 THC in sufficient concentrations to vape and achieve a "high," D9 THC is created in illegal amounts.

52. The Hemp Farming Act of 2018 removed hemp (defined as cannabis with less than 0.3% THC) from Schedule I controlled substances and making it an ordinary agricultural commodity. Its provisions were incorporated in the 2018 United States Farm Bill that became law on December 20, 2018.

53. Then, the interim final rule entitled "Implementation of the Agriculture Improvement Act of 2018" effective on August 21, 2020 (85 Fed. Reg. 51,639) made a product containing contains more than .3% D9 THC by dry weight illegal.

54. As used in this Complaint, an illegal D8 vape means a vape that contains more than .3 D9 hemp derived THC by dry weight or THC.

55. The Defendants advertise that their D8 vape pens and concentrates do not contain

more than 0.3% THC by dry weight. All Defendants know that if a product contains more it is considered marijuana and is not legal.

56. On the issue of D9 THC, state and federal law is clear: it is a felony under the Controlled Substances Act of 1970 ("CSA") to sell a cannabis product that contains more than .3% D9 by dry weight.

57. Of course, in recent years the United States Department of Justice has largely declined to bring prosecutions under the federal cannabis laws, prompting hundreds of millions of investment dollars and thousands of new customers to flow into the D8 commercial hemp industry.

58. But the Justice Department's current policy of non-enforcement does not strike a single word from the U.S. Code or deprive private individuals of their judicially- enforceable rights under federal law. The Department of Justice can no more amend a federal statute than can the States, and cannabis remains just as illegal under federal law today as it was when Congress passed the Controlled Substances Act in 1970 (CSA herein).

59. Dealing in cannabis than contains more than .3% D9 THC by dry weight or that contains D9 THC is illegal activity under state and federal law, and those who engage in a pattern of illegal activity should disgorge the profit and all monies received from the illegal transaction.

60. The sale of the Product with more than .3% D9 THC by dry weight is illegal because it is a Schedule I drug and defined as marijuana. Plaintiff purchased an Alliance Industries D8 vape pen product, which contained more than .3% D9 THC by dry weight. Defendants falsely, expressly or impliedly warranted these products contained less than .3% D9 THC by dry weight and therefore was not marijuana. But it was marijuana.

61. Reasonable consumers like Plaintiff must and do rely on a company to honestly identify and describe the components, attributes, and features of the Product, relative to itself and

other comparable products or alternatives on packaging and through COA's.

62. The value of the Product that Plaintiff purchased was materially less than its value as represented by defendant because it was illegal.

63. Plaintiff bought the Product because the Product was represented as legal. The Product was sold over the counter, resulting in additional and illegal profits.

64. Had Plaintiff known the truth, she would not have purchased the Product because it is illegal to buy and use these products.

65. The hemp is cultivated, then its leaves and flower are processed to create distillate. The distillate then contains D8 and D9 THC. However, the D9 in the distillate is not scrubbed by the distiller because it costs too much. Accordingly, all of the Defendants D8 vape pens and concentrates contain an illegal amount of D9 THC. Thus, the vape pens and concentrates contain marijuana, a Schedule I controlled substance.

66. The Defendants manufacture and distribute their products both wholesale and retail for use in Arkansas.

67. The Defendants Products are sold at several retail locations across the nation and over the internet.

68. The Product is sold individually. But the Defendants use a uniform process to create the distillate used in D8 vape pens, but the D9 in the distillate is never scrubbed to make the product legal.

## CLASS ALLEGATIONS

69. Defendant(s) maintains a database that identifies persons who purchase D8 products and the type of D8 products purchased from the corporate Defendants through credit card receipts and customer loyalty clubs. There are thousands of class members. Plaintiff seeks

certification under Ark. R. Civ. P. 23(b)(2) and (b)(3) of the following class:

a. All persons who bought one or more D8 vape pen Products or concentrate Products manufactured by the Defendants who have a receipt or are identified in Smoker Friendly's purchaser database within the appropriate statute of limitations until the date of certification. Excluded from Class are any directors, officers, or employees of Defendants, Plaintiff's counsel, members of their immediate families, and any director, officer, or employee of any entity in which Defendants have a controlling interest and legal representatives, heirs, successors, or assigns of any such persons.

b. All persons who bought one or more D8 vape pen Products manufactured by the Defendants and sold or delivered in or to the State of Arkansas who have a receipt or are identified in Defendants or other Arkansas retailer purchaser database within the appropriate statute of limitations until the date of certification. Excluded from Class are any directors, officers, or employees of Defendants, Plaintiff's counsel, members of their immediate families, and any director, officer, or employee of any entity in which Defendants have a controlling interest and legal representatives, heirs, successors, or assigns of any such persons.

70. Common questions of law or fact predominate and include whether Defendants' representations were and are misleading in violation of Arkansas law and if the Plaintiff and the class members are entitled to damages or rescission. In this case, the key issues include:

a. Did the Products purchased by the Plaintiff and Class contain D9 THC?

b. Did the Products purchased by the Plaintiff and Class contain more than .3% hemp-derived D9 THC by dry weight?

c. Was the Product a Controlled Substance?

71. Plaintiffs claims and basis for relief are typical to other members because all engaged in an illegal transaction unknowingly and are entitled to rescind the transaction.

72. Plaintiff is an adequate representative because Plaintiff's interests do not conflict with other members. No individual inquiry is necessary since the focus is only on Defendant's practices, and the class is definable and ascertainable by Defendant's business records and receipts.

73. Individual actions would risk inconsistent results and be both repetitive and impractical to justify, as the claims are modest relative to the scope of the harm. Class action is superior because of the relatively small amount of money for each purchase. Indeed, public policy does not encourage the sale of illegal drugs.

74. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

75. Class members number in the thousands, and joinder would be impossible. But the amount in controversy is less than five million dollars.

76. As allowed by Rule 23(b)(2), Plaintiff seeks class-wide injunctive and equitable relief because Defendant's practices continue, despite notice, and certain equitable remedies are sought. Plaintiff seeks certification under Rule 23(b)(1), (2), and (3).

**COUNT I § 16-124-103**

77. Plaintiff and the Class re-allege the foregoing as if fully set out herein.

78. Plaintiff and the Class bought the Product within the five years preceding the filing of this lawsuit from **SMOKER FRIENDLY**.

79. Plaintiff bought the Defendants Products that warranted the product was legal.

80. Plaintiff wanted to buy legal D8 products, but, unbeknownst to her, she did not.

81. Plaintiff did not want D9, but she now believes that was what was received.

82. Plaintiff did not expect that the "D8" products would contain more than .3% D9 by dry weight, rendering the Product illegal under federal law.

83. Plaintiff bought the Products at, or exceeding, the retail price. But the contract was illegal.

84. Plaintiff and the Class relied on the representations identified here.

85. Plaintiff and the Class would not have purchased the Products if each knew the representations were false and misleading.

86. Plaintiff and the Class chose between Defendant's Product and other similar products which were represented similarly but which did not misrepresent their D9 content.

87. The Products were worth less than what Plaintiff and the Class paid, and she would not have paid as much, absent Defendant's false and misleading statements and omissions.

88. Plaintiff intends to, seeks to, and will, purchase the Products again when each can do so with the assurance that the Product's representations are legal.

89. The manufacturing Defendants, the distribution Defendants, the co-packing Defendants, and the Retail Defendants, aided and abetted by the Lab Defendants, have violated ACA § 16-124-103 by engaging in unlawful, fraudulent, and unfair conduct.

90. Plaintiff reported this conduct to the prosecutor, prior to the filing of this action, and has not knowingly used illegal drugs in the six months prior to the filing of this action.

91. Plaintiff has personally disclosed to narcotics enforcement authorities, all the information known to the individual drug user regarding his or her source of illegal drugs. Plaintiff and the Class has not knowingly used an illegal drug within the six (6) months before filing the action; and Plaintiff and the Class continues to remain free of the knowing use of an illegal drug throughout the pendency of the action.

92. Defendants engaged in unlawful conduct by violating the Arkansas Drug Dealer Liability Act, as alleged throughout and incorporated here.

93. As alleged in detail above, Defendants' labeling is false and misleading. Their labeling deceived Plaintiff and other reasonable consumers.

94. Defendants' conduct caused substantial injury to Plaintiff and the Class because they have been defrauded of the purchase price. The harm to Plaintiff and the Class outweighs the public utility of Defendants' conduct (which is none). Inaccurately labeled and illegal D9 THC content has no public utility. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading labels only injure healthy competition and harm consumers.

95. Plaintiff and the Class could not have reasonably avoided this injury. As alleged above, Defendants' misrepresentations and omissions were deceiving to reasonable consumers. Defendants' conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

96. For all prongs, Plaintiff and the Class saw, read and reasonably relied on the Defendants' misrepresentations and omissions when purchasing Defendants' Products.

97. Defendants' misrepresentations were a determining factor in Plaintiff's purchase decisions.

98. Plaintiff and the Class were injured as a direct and proximate result of Defendants' conduct because: (a) She would not have purchased Defendants' Products if she had known that the D9 THC content in the product contained an illegal amount. As a result, Plaintiff was damaged in the amount of her purchase and has suffered severe mental and emotional distress.

## COUNT II BREACHES OF EXPRESS WARRANTY, IMPLIED WARRANTY OF MERCHANTABILITY

99. The Product was manufactured, labeled, and sold by Defendant(s) and expressly

and impliedly warranted to Plaintiff that the Product was a legal product that contained D8, understood as being comprised of a less than .3% hemp derived D9 THC by dry weight, instead of an illegal amount. Defendants warranted that the products were in compliance with federal law, but they were not. The product(s) contained more than .3% hemp derived D9 THC by dry weight and D9 THC.

100. But the Product contained more than .3% D9 by dry weight.

101. Each Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

102. This duty is based on Defendant's role in the market for this type of Product.

103. Plaintiff provided, or will provide, notice to Defendant, its agents, representatives, retailers, and their employees.

104. The Defendants received notice and should have been aware of these issues due to complaints by regulators, lawyers, and consumers, to its main offices.

105. The Product(s) did not conform to their affirmations of fact and promises due to Defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

106. Plaintiff and the Class would not have purchased the Products, or used the products, if the true facts had been known. As a result, Plaintiff was demoted and damaged.

## COUNT III FRAUD
## VIOLATION OF ARKANSAS DECEPTIVE TRADE PRACTICES ACT

107. Defendants misrepresented and/or omitted the attributes and qualities of the Product, that it was a legal product that contained D8, understood as being comprised of a non-de minimis legal amount of D9, instead of an illegal amount. This was fraud and a violation of the Arkansas Deceptive Trade Practices Act.

108. Plaintiff and the Class reasonably and justifiably relied on these intentional misrepresentations and omissions, which served to induce and did induce, her purchase of the Products.

109. Plaintiff and the Class would not have purchased the Products if the true facts had been known, suffering damages.

110. Plaintiff and the Class reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Products.

111. Plaintiff and the Class would not have purchased the Products or used the Products if the true facts had been known, suffering a demotion and damages.

112. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## COUNT IV UNJUST ENRICHMENT/DISGORGEMENT

113. Defendants obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and the Class, who seeks restitution and disgorgement of illegally obtained profits. If the new contract be fair and lawful, and the new consideration be valid and adequate, it will be enforced. If, however, it be unfair or fraudulent, or the new consideration so inadequate as to import fraud, imposition, or undue influence, it will be rescinded, and justice done to the parties. *Dent v. Ferguson*, 132 U.S. 50, 67, 10 S. Ct. 13, 19, 33 L. Ed. 242 (1889). Therefore, Plaintiff pleads for disgorgement and rescission.

114. Plaintiff(s) demand a trial by jury. .

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, pray for judgment:

a. Awarding compensatory damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims not exceeding 5 million dollars;

b. For an Order certifying the Class above;

c. Awarding costs and expenses, including reasonable attorneys' fees for Plaintiffs' attorneys and experts; and,

d. For an Order, summarily shutting down all the manufacture and distributions of all D8 vape pens and concentrates in the manner prescribed the Arkansas Drug Dealer Liability Act;

e. An ex parte prejudgment attachment order, from the Court, against all assets of Defendants, sufficient to satisfy a potential award;

f. Other and further relief as the Court deems just and proper.

Respectfully submitted,
Angela Smith, on behalf of herself and all others

By: ______________________
Donald M. Spears, Attorney for Plaintiffs
ABA# 75119
113 South Market
Benton, Arkansas 72015
501-315-0092
dspearslaw@gmail.com

**VERIFICATION**

State of Arkansas )
) ss.
County of Saline )

I, Angela Smith, state upon oath that I have read the statements contained in the foregoing pleading and they are true and correct to the best of my knowledge and belief.

Angela C. Smith
Angela Smith

Subscribed and sworn to before me this 4 day of April 2024.

ELIZABETH ANN HODGES
Notary Public-Arkansas
Lonoke County
My Commission Expires 09-14-2031
Commission # 12716016

Notary Public

My Commission Expires
9/14/31