IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 23 2024

TAMMY H. DOWNS, CLERK
By: DEP CLERK

**ANGELA SMITH, on behalf of herself and all others similarly situated,**
**Plaintiff,**

**v.** **CASE NO. 4:24-cv-469-BSM**

**CIGARETTE STORE LLC dba SMOKER FRIENDLY, GIULIANI CATTLE CO. LLC, ALLIANCE HEMP COMPANY LLC, ALLIANCE HEMP CO. LLC, DERIK JULIAN, RYAN HAYDEN, SAVAGE ENTERPRISES LLC, RIGHTFUL VENTURES INC dba PHARMACBD, ACS LABORATORY LLC, and PHARMLABS LLC,**
**Defendants.**

## SECOND AMENDED COMPLAINT

COMES NOW, Plaintiff, Angela Smith, by and through her counsel of record, and for this Second Amended Complaint, Plaintiff alleges the following upon information and belief, except for the allegations pertaining specifically to Plaintiff, which are based on personal knowledge:

## JURISDICTION AND VENUE

**1.** This is an action brought under the Arkansas Drug Dealer Liability Act, fraud, breach of warranty, rescission, and unjust enrichment. This Court has subject matter jurisdiction. No federal claims are brought, and the damages sought do not exceed five million dollars.

**2.** Venue is proper because Plaintiff purchased the hemp products from Cigarette Store, LLC dba Smoker Friendly #1107 in Pulaski County, Arkansas.

**3.** The Court has personal jurisdiction over Defendants related to this matter as, *inter alia*, Defendants manufactured, distributed, and/or sold the Products in this District.

**4.** Each Defendant has established a business entity and presence in the state of Arkansas such that the assertion of jurisdiction is fair and reasonable under constitutional

standards.

**5.** Each Defendant has purposefully availed themselves of the privileges of conducting activities within Arkansas by doing business, entering contracts, or deliberately interacting with residents of Arkansas.

**6.** Venue is proper in this District because the Retail Defendant sells the products in this District, and some of the actions giving rise to the claims occurred within this District.

**7.** Each Defendant has established "minimum contacts" with Arkansas such that the assertion of jurisdiction is fair and reasonable under constitutional standards. If a defendant voluntarily took actions within the state that would subject them to its laws, it strengthens the case for jurisdiction. Each Defendant's publication and distribution of Delta-8 products within the State of Arkansas caused Plaintiff and the Class harm in the State of Arkansas, so this Court has specific personal jurisdiction. Thus, there is a direct connection between each Defendant's actions in the state and the legal dispute, which enhances the likelihood of jurisdiction. Relevant evidence and witnesses exist in Arkansas. Each Defendant's actions were foreseeable to impact the forum state, it may support jurisdiction. Unilateral actions by Plaintiff alone, such as purchasing a product or service from Defendant, may not be sufficient.

**8.** Plaintiff purchased all the products from Cigarette Store LLC dba Smoker Friendly at 8414 Geyer Springs Rd, #2, Little Rock, Arkansas, 72209, on December 5, 2023.

**PARTIES**

**9.** Plaintiff Angela Smith is over the age of eighteen years old and a resident of the State of Arkansas.

**10.** Defendant Cigarette Store LLC dba Smoker Friendly (hereafter "Smoker Friendly") is a limited liability company organized under the general business and entity laws of

Colorado. Cigarette Store LLC dba Smoker Friendly has over fifty retail locations across the state of Arkansas.

**11.** Defendant Giuliani Cattle Company LLC (hereafter "Guiliani") is a corporation organized and existing under the general business entity and corporation law of the state of Oregon. Guiliani cultivates, harvests, manufactures, and distributes hemp products to consumers nationwide, including in Arkansas

**a.** Defendant Alliance Hemp Company LLC (hereafter "Alliance") is an inactive corporation organized under the general business entity and corporation law of the state of Oregon. Alliance Hemp Company LLC cultivates, harvests, manufactures, and distributes hemp products to consumers nationwide, including in Arkansas.

**b.** Defendant Alliance Hemp Co LLC (hereafter "Alliance Co") is an inactive corporation organized under the general business entity and corporation law of the state of Oklahoma. Alliance Hemp Co LLC cultivates, harvests, manufactures, and distributes hemp products to consumers nationwide, including in Arkansas.

**c.** Defendant Derik Julian is listed as the "owner and operator" of Alliance Hemp Co and knowingly manufactured illegal hemp products to consumers nationwide, including in Arkansas.

**d.** Defendant Ryan Hayden is listed as the "lead grower" for Alliance Hemp Co and knowingly manufactured illegal hemp products to consumers nationwide, including in Arkansas.

**e.** These Defendants are collectively sued as "Alliance Defendants."

**12.** Defendant Pharmlabs LLC (hereafter "Pharmlabs") is a corporation organized and existing under the general business entity and corporation law of California and does business in

the state of California. Pharmlabs LLC is a lab in California that produced one or more of the fraudulent COAs for one or more products identified herein. Pharmlabs LLC's fraudulent COAs assist in allowing illegal products to enter the stream of commerce and into the hands of consumers nationwide, including in Arkansas.

**13.** Defendant ACS Laboratory LLC (hereafter "ACS") is a corporation organized and existing under the general business entity and corporation law of Florida. ACS Laboratory LLC is a lab in Florida that produced one or more of the fraudulent COAs for one or more products identified herein. ACS Laboratory LLC's fraudulent COAs assist in allowing illegal products to enter the stream of commerce and into the hands of consumers nationwide, including in Arkansas.

**14.** Defendant Savage Enterprises LLC (hereafter "Savage") is a corporation organized and existing under the general business entity and corporation law of the state of Wyoming and does business in Arkansas, California, Alabama, Georgia, Florida, Hawaii, Idaho, Kentucky, and numerous other states. Savage Enterprises LLC manufactures and distributes hemp products to consumers nationwide, including in Arkansas.

**15.** Defendant Rightful Ventures Inc dba Pharma CBD (hereafter "Pharma CBD") is a corporation organized and existing under the general business entity and corporation law of the state of North Carolina. Pharma CBD manufactures and distributes hemp products to consumers nationwide, including in Arkansas.

**16.** John Does 1-10 are individuals or entities who have provided fraudulent Certificate of Analysis to the Manufacturing Defendants and/or Retail Defendants.

**17.** John Does 11-20 are individuals or entities who have provided distillate to the Manufacturing Defendants.

**18.** The term "Manufacturing Defendants" collectively refers to Defendants Savage

Enterprises LLC, Alliance Defendants, and Rightful Ventures Inc dba Pharma CBD.

**19.** The term "Lab Defendants" collectively refers to Defendants Pharmlabs LLC and ACS Laboratory LLC.

**20.** The term "Retail Defendant" is Cigarette Store LLC dba Smoker Friendly.

## GENERAL ALLEGATIONS OF FACT

**21.** This case presents a significant issue of public health and consumer deception. Defendants knowingly and falsely represented to consumers that the delta-8 ("D8") vape pens they manufactured, sold, and tested were legal under federal and state law, specifically claiming these products contained no more than 0.3% delta-9 ("D9") tetrahydrocannabinol ("THC") on a dry weight basis. These representations were not only false but were made with the intent to deceive and mislead consumers into purchasing products that were, in fact, illegal and unsafe.

**22.** Delta-8 THC, scientifically known as delta-8-tetrahydrocannabinol, is a cannabis compound that has gained popularity due to its similarity to delta-9 THC, the primary psychoactive compound in cannabis responsible for euphoria, relaxation, and sedation. Delta-8 THC is often referred to as "D-8" and can produce effects similar to those of delta-9 THC, though typically less potent at comparable concentrations.

**23.** Delta-8 THC occurs naturally in both marijuana and hemp, but its presence is minimal, requiring substantial amounts of plant material to extract significant quantities. As a result, delta-8 THC is typically synthesized. Like delta-9 THC, delta-8 THC binds to the body's endocannabinoid system, producing psychoactive effects. Chemically, delta-8 and delta-9 THC are similar, both featuring a double bond in their molecular structures. The distinction lies in the position of the double bond: delta-8 has it on the eighth carbon atom, while delta-9 has it on the ninth carbon atom.

**24.** Due to the position of its double bond, delta-8 THC binds to the endocannabinoid system differently, making it less potent than delta-9 THC. To obtain delta-8 THC in sufficient concentrations for vaping and to produce a "high," manufacturers illegally synthesize delta-9 THC in amounts exceeding legal limits.

**25.** Under the Hemp Farming Act of 2018 and the corresponding United States Farm Bill, products containing more than 0.3% delta-9 THC on a dry weight basis are unequivocally classified as marijuana and remain illegal under both federal and state law. Manufacturing Defendants' products, including those purchased by Plaintiff, flagrantly violate these legal standards, rendering their sale and distribution illegal under the Controlled Substances Act of 1970 ("CSA") and the Arkansas Hemp Production Act of 2021 (A.C.A. § 2-15-501 et seq.).

**26.** The Agricultural Improvement Act of 2018, *Pub. L. No.* 115-334, § 12619, and the Controlled Substances Act, 21 *U.S.C.* § 802(16)(B), clarify that products exceeding 0.3% THC are classified as marijuana.

**27.** The hemp plant is cultivated, then its leaves and other parts are processed to create distillate. The distillate is then synthesized to create high levels of delta-8 and delta-9 THC. However, the delta-9 cannabinoid in the resulting product is not adequately removed by the distiller due to the associated costs.

**28.** Cannabinoid distillate typically contains high levels of cannabinoids and minimal amounts of other plant compounds, such as terpenes and flavonoids, making it a versatile ingredient for various cannabis products. Manufacturer Defendants commonly use the distillate in the manufacturing of edibles, vape cartridges, topicals, tinctures, and other cannabis-infused products due to its consistent potency and customizable cannabinoid profiles

**29.** A Certificate of Analysis ("COA") is a detailed document issued by a third-party laboratory that verifies the contents and quality of a hemp product. It ensures compliance with legal standards and provides transparency to consumers. Critically, the COA confirms that the delta-9 THC content does not exceed the 0.3% limit mandated by the 2018 Hemp Farm Bill Act.

**30.** Hemp testing involves two methods: (1) dry weight for solids or plant-based products, and (2) volume-based testing for liquids, such as vape oils. Advanced testing through processes such as High-Performance Liquid Chromatography (HPLC) or Gas Chromatography (GC) are designed to ensure precise volume-based testing. These two methods are to ensure that THC levels are accurately assessed. State and federal law permits some variability due to environmental factors, but non-compliance with the 0.3% threshold is not excused.

**31.** Federal guidelines, including USDA's Sampling Guidelines for Hemp and Laboratory Testing Guidelines, outline sampling, drying, and testing procedures. In dry weight testing, drying removes moisture, ensuring THC concentration is based solely on cannabinoids. Liquid-based products are tested by volume, with the same 0.3% limit applied.

**32.** The liquid in the vape devices, commonly referred to as vape oil, is shelf-stable, meaning that the delta-9 THC cannabinoid levels measured by independent laboratories, such as Lab Defendants, remain consistent from the time of testing to the time the product was packaged by manufacturers, such as Manufacturing Defendants, and sold to distributors and retailers, such as Retail Defendant, for resale to consumers. Moreover, the vape oil in these devices is not derived from natural agricultural processes but is a synthetic product. The delta-9 THC cannabinoid in vape oil is artificially synthesized through a manufacturing process, highlighting its synthetic and unlawful nature.

**33.** An illegal or noncompliant product is a product that contains more than 0.3% delta-9 THC.

**34.** Although the United States Department of Justice has recently refrained from prosecuting violations of federal cannabis laws, this does not alter the legality of such actions under federal law, nor does it deprive individuals of their judicially enforceable rights. The Department of Justice cannot amend federal statutes, and cannabis remains illegal under federal law, as it has been since the passage of the Controlled Substances Act in 1970.

**35.** Engaging in the sale of cannabis products containing more than 0.3% delta-9 THC by dry weight or that contain delta-9 THC is illegal under state and federal law. Individuals or entities that engage in such illegal activities must be required to disgorge all ill-gotten profits and return any monies obtained from these unlawful transactions to prevent unjust enrichment and protect the public interest.

**36.** In 2023, Smoker Friendly was placed on Notice that it was selling a Schedule I Controlled substance, marijuana, yet Smoker Friendly continued to sell marijuana and continues until this day.

**37.** In October of 2023, Pharmlabs was advised that its testing methods were inaccurate and unreliable by Andrea Holmes. So, Pharmlabs advised its customers that its COA was not a document that certified compliance with the Farm Bill. Yet, Pharmlabs' customers continued to mislead consumers like the Plaintiff into believing that the products were legal. In fact, the products were marijuana.

**38.** On December 5, 2023, Plaintiff purchased the following products (hereafter "The Products") from Smoker Friendly #1107:

**a.** Product #1: Sharklato 2g vape. manufactured by Alliance Defendants, for $27.99, plus tax.

**b.** Product #2: Blue Dream 1mL vape cartridge, manufactured by Defendant Pharma CBD for $19.99, plus tax.

**c.** Product #3: Banana Runtz 2g vape cartridge, manufactured by Defendant Savage Enterprises for $19.99, plus tax.

**39.** Product #1's, Sharklato, packaging contains a QR code to scan and then be directed to the product's COA. Defendant ACS Laboratory, a licensed laboratory located in Florida, issued Product #1's COA. Product #1 is marketed, advertised, and sold as compliant with state and federal laws. Product #1's packaging states "Less than .3% Delta 9 THC" on the back of the packaging. Product #1's packaging and COA state the product contains compliant levels of delta-9 THC. This representation is patently false.

**40.** Plaintiff had Product #1, Sharklato, tested by an ISO 17025 accredited laboratory, and Product #1 contained 6.94% delta-9 THC, which is 2213% above the allowable maximum limit of 0.3% delta-9 THC. The test results showed Product #1 contained excessive levels of the cannabinoid delta-9 THC, which means Product #1 is marijuana.

**41.** Product #2's, Blue Dream, label contains a QR code to scan and then be directed to the product's COA. Pharmlabs, a licensed laboratory located in California, issued Product #2's COA. Product #2 is marketed, advertised, and sold as compliant with state and federal laws. Product #2's packaging states, "Per state regulations and guidelines, this product has no more than 0.3% total THC. For additional product information please visit our website" on the back of the packaging. Product #2's packaging and COA state the product contains compliant levels of delta-9 THC. This representation is patently false.

**42.** Plaintiff had Product #2, Blue Dream, tested by an ISO 17025 accredited laboratory, and Product #2 contained 6.26% delta-9 THC, which is 1986% above the allowable maximum limit of 0.3% delta-9 THC. The test results showed Product #2 contained excessive levels of the cannabinoid delta-9 THC, which means Product #1 is marijuana.

**43.** Product #3's, Banana Runtz, label contains a QR code to scan and then be directed to the product's COA. Pharmlabs, a licensed laboratory located in California, issued Product #3's COA. Product #3 is marketed, advertised, and sold as compliant with state and federal laws. Product #3's packaging states, "THIS PRODUCT CONTAINS A TOTAL DELTA-9 TETRAHYDROCANNABINOL CONCENTRATION THAT DOES NOT EXCEED 0.3% ON A DRY-WEIGHT BASES" on the back of the packaging. Product #3's packaging and COA state the product contains compliant levels of delta-9 THC. This representation is patently false.

**44.** Plaintiff had Product #3, Banana Runtz, tested by an ISO 17025 accredited laboratory, and Product #3 contained 3.98% delta-9 THC, which is 1226% above the allowable maximum limit of 0.3% delta-9 THC. The test results showed Product #3 contained excessive levels of the cannabinoid delta-9 THC, which means Product #1 is marijuana.

**45.** Unbeknownst to Plaintiff, The Products she purchased at full retail price were marijuana, a controlled substance.

**46.** Defendant Alliance Defendants' website claims its products are trustworthy and superior to other similar products. More specifically, its website states, "Our products are thoroughly tested, trustworthy and available to you to assist in the healing of a long and growing list of things" and "No other hemp farm compares in experience, knowledge, or background of this remarkable plant. This helps Alliance Hemp Co easily stand out from a growing number of CBD businesses offering sub-par products."

**47.** Smoker Friendly is selling hemp products that it knows or should have known contained excessive levels of delta-9 THC, which violates the Arkansas Hemp Production Act of 2021 (A.C.A. § 2-15-501 et seq.), the Controlled Substances Act of 1970, and the 2018 Farm Bill (Agriculture Improvement Act of 2018, P.L. 115-334).

**48.** Smoker Friendly stores continue to sell illegal vape products after having been notified that products in their stores tested above the legal limit of 0.3% delta-9 THC and are illegal.

**49.** Plaintiff bought the Products because they were represented as legal. The sale of The Products resulted in illegal profits for the Defendants.

**50.** Had Plaintiff known the truth, she would not have purchased the Products because it is illegal to buy and use marijuana.

**51.** Plaintiff trusted and relied upon the delta-9 THC disclaimer on each product's packaging and website and the levels shown on each product's COA.

**52.** The Products Plaintiff purchased were worthless because they were illegal due to their excessive levels of delta-9 THC.

**53.** Manufacturing Defendants are not exercising reasonable care to ensure that the products they are manufacturing and/or selling are legal. Lab Defendants are colluding and conspiring with Manufacturing Defendants in their enterprise by providing them with fraudulent COAs. The fraudulent COAs issued by Lab Defendants assist in allowing illegal products manufactured by Manufacturing Defendants to enter the stream of commerce and into the hands of consumers nationwide. Retail Defendant engaged various vendors to purchase hemp-based products and could have purchased legal hemp products, meaning hemp products that contained no more than 0.3% delta-9 THC.

**54.** Retail Defendant did not take the necessary steps to ensure that the products they were selling to consumers were legal.

**55.** The Manufacturing Defendants are among the largest hemp product manufacturers in the hemp industry. Manufacturing Defendants warrant and market on their product's packaging and website that the product they manufacture is compliant with state and federal law. Manufacturing Defendants manufacture and then distribute their products, directly and indirectly, to consumers, like Plaintiff, nationwide, including in Arkansas.

**56.** The Lab Defendants are among the largest hemp testing laboratories in the hemp industry. COAs issued by Lab Defendants are relied upon by consumers, like Plaintiff, nationwide, including in Arkansas.

**57.** The Retail Defendant is among the largest vape pen sellers in the state of Arkansas.

**58.** Defendants are knowingly manufacturing and selling products that are controlled substances. Each Defendant meticulously chose to work with certain vendors to manufacture, distribute, and/or sell marijuana.

**59.** Entities and/or Persons like the Manufacturing Defendants who market their products as medicinal to improve health and wellness should be held to reasonable production standards to ensure their products are legal.

**60.** Each Manufacturer Defendant warrants on the product's website and packaging that The Products are compliant with the Hemp Farming Act of 2018 and contain less than 0.3% delta-9 THC.

**61.** Each Manufacturer Defendant intended for Plaintiff and class members to rely on these false representations when purchasing The Products.

**62.** The false representations made by Manufacturer Defendants and Lab Defendants

are inaccurate because The Products do not contain a legal amount of delta-9 THC.

**63.** Plaintiff chose the Products over similarly situated and represented products because of the representations and assurances made on the product's website, packaging, and COA.

**64.** A coordinated scheme exists between the Manufacturing, Lab, and Retail Defendants to sell marijuana. Lab Defendants collude with Manufacturing Defendants to knowingly issue false COAs, which Retail Defendants use to sell marijuana.

**65.** Reasonable consumers, like Plaintiff and the class members, rely on a company to honestly identify and describe the Product's components, attributes, and features relative to itself and other comparable products or alternatives.

**66.** Had Plaintiff and proposed class members known the truth, they would not have bought the Products because it is not legal under the CSA.

**67.** Plaintiff and class members suffered injury as a result of Defendants' negligent misrepresentations and omissions, including:

**a.** Plaintiff and class members suffered an economic loss, namely, the purchase price of the items purchased, as the illegal nature of the products purchased rendered such products valueless;

**b.** Plaintiff and class members were and are subject to threat of arrest and prosecution due to their possession of products and substances that are illegal under the CSA and were marketed and sold by Defendant(s) to be compliant products; and

**c.** Plaintiffs and class members were subjected to involuntary intoxication, harming their physical, mental, and emotional health.

## CLASS ALLEGATIONS

**68.** Lab Defendants are statutorily required to retain results from all tests completed and notify the State and/or Federal regulating body of products with over 0.3% delta-9 THC.

**69.** Manufacturing Defendants maintain a database that identifies entities and individuals that purchased delta-8 products under the +

**70.** Retail Defendant maintains a database that identifies persons who purchase D8 products, and the type of DB products purchased from the corporate Defendants through credit card receipts and customer loyalty clubs. There are thousands of class members.

**71.** Plaintiff seeks certification under Ark. R. Civ. P. 23(b)(2) and (b)(3) of the following class:

**a.** All persons who bought one or more delta-8 Products or concentrate Products manufactured by the Defendants who have a receipt or are identified in Smoker Friendly's purchaser database within the appropriate statute of limitations until the date of certification. Excluded from Class are any directors, officers, or employees of Defendants, Plaintiffs counsel, members of their immediate families, and any director, officer, or employee of any entity in which Defendants have a controlling interest and legal representatives, heirs, successors, or assigns of any such persons.

**b.** All persons who bought one or more D8 vape pen Products manufactured by the Defendants and sold or delivered in or to the State of Arkansas who have a receipt or are identified in Defendants or other Arkansas retailer purchaser database within the appropriate statute of limitations until the date of certification. Excluded from Class are any directors, officers, or employees of Defendants, Plaintiffs counsel, members of their immediate families, and any director, officer, or employee of any

entity in which Defendants have a controlling interest and legal representatives, heirs, successors, or assigns of any such persons.

**72.** Common questions of law or fact predominate and include whether Defendants' representations were and are misleading in violation of Arkansas law and if the Plaintiff and the class members are entitled to damages or rescission. In this case, the key issues include:

- **a.** Did the Products purchased by the Plaintiff and Class contain D9 THC?
- **b.** Did the Products purchased by the Plaintiff and Class contain more than .3% hemp-derived D9 THC by dry weight?
- **c.** Was the Product a Controlled Substance?

**73.** Plaintiff's claims and basis for relief are typical to other members because all engaged in an illegal transaction unknowingly and are entitled to rescind the transaction.

**74.** Plaintiff is an adequate representative because Plaintiffs interests do not conflict with other members. No individual inquiry is necessary since the focus is only on each Defendant's practices, and the class is definable and ascertainable by Manufacturing and Retail Defendant's business records and receipts.

**75.** Individual actions would risk inconsistent results and be both repetitive and impractical to justify, as the claims are modest relative to the scope of the harm. Class action is superior because of the relatively small amount of money for each purchase. Indeed, public policy does not encourage the sale of illegal drugs.

**76.** Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

**77.** Class members number in the thousands and joinder would be impossible. But the amount in controversy is less than five million dollars.

**78.** As allowed by Rule 23(b)(2), Plaintiff seeks class-wide injunctive and equitable relief because Defendant's practices continue, despite notice, and certain equitable remedies are sought. Plaintiff seeks certification under Rule 23(b)(1), (2), and (3).

**COUNT I - § 16-124-103 - ARKANSAS DRUG DEALER LIABILITY ACT**

**79.** Plaintiff and Class members re-allege and incorporate by reference paragraphs 1 through 78 as though fully set forth herein.

**80.** The Arkansas Drug Dealer Liability Act (Ark. Code Ann. § 16-124-103) imposes strict liability on any person or entity who knowingly participates in the marketing, distribution, or sale of a controlled substance. A defendant can be held liable even if they were not the direct seller of the controlled substance to the Plaintiff or the Class.

**81.** Delta-9 THC, when present in concentrations exceeding 0.3% by dry weight, is classified as a Schedule I controlled substance under federal law, including the Controlled Substances Act, and under Arkansas law, including the Arkansas Hemp Production Act.

**82.** The Products purchased by Plaintiff and the Class, including but not limited to Sharklato, Blue Dream, and Banana Runtz vape cartridges, contained delta-9 THC concentrations far exceeding the 0.3% legal threshold, as confirmed by independent lab testing. These levels, ranging from 3.98% to 6.94% delta-9 THC, rendered the Products illegal controlled substances.

**83.** Plaintiff purchased the Product from the Retail Defendant within the five years preceding the filing of this lawsuit. Plaintiff sought to treat her anxiety by purchasing what she believed to be a legal delta-8 product, based on Defendants' warranties and representations. However, unbeknownst to Plaintiff, the Product she received contained synthetic delta-9 THC, which exceeded the legal limit of 0.3% by dry weight, thus rendering the Product illegal under federal law.

**84.** Plaintiff specifically relied on the representations made by Defendants that the Product was legal and complied with all applicable state and federal regulations. Had Plaintiff known that the Product contained illegal levels of delta-9 THC, she would not have purchased it. As a result of Defendants' misrepresentations and omissions, Plaintiff has suffered an economic loss, having paid the retail price for a Product that was worthless due to its illegal nature.

**85.** Plaintiff did not wish to purchase or consume synthetic delta-9 THC, yet that was the substance she ultimately received, without her knowledge or consent. Defendants, including the Manufacturer Defendants and Retail Defendant, aided by the Lab Defendant, have violated the Arkansas Drug Dealer Liability Act (ACA § 16-124-103) by engaging in unlawful, fraudulent, and unfair conduct. This conduct has caused harm to Plaintiff and constitutes a public nuisance that should be enjoined.

**86.** Defendants, including the Manufacturing Defendants, Lab Defendants, and the Retail Defendant, knowingly and willfully participated in the marketing, distribution, and sale of these controlled substances while falsely representing the Products as legal under federal and state law.

**87.** Defendants knew or should have known that the Products they were manufacturing, distributing, and selling contained delta-9 THC concentrations far in excess of the legal threshold of 0.3% by dry weight. Despite this knowledge, Defendants continued to market and sell the Products as compliant with federal and state law, deliberately misrepresenting their legality to consumers.

**88.** The Manufacturing Defendants produced, packaged, and labeled the Products as compliant with federal and state law, while directing consumers to view Certificates of Analysis (COAs) through QR codes or links on the product labels. The Lab Defendants issued these COAs,

certifying that the Products contained less than 0.3% delta-9 THC by dry weight. even though independent testing showed the Products contained illegal levels of delta-9 THC. The Retail Defendant marketed and sold the Products based on these false COAs and labels. misleading consumers into believing the Products were compliant and legal.

**89.** The COAs, which were generated by Lab Defendants ACS Laboratory LLC and Pharmlabs LLC, were false and misleading. These documents fraudulently stated that the Products contained delta-9 THC levels within the legal limit, thereby inducing consumers, including Plaintiff and the Class, to believe the Products were compliant with federal and state law.

**90.** Consumers reasonably relied on these false COAs and product labels in making their purchasing decisions. The COAs and packaging created the impression that the Products were properly tested and independently verified for compliance. when in fact, they were illegal and unsafe. The COAs served as a central element in Defendants' scheme to mislead consumers and facilitate the sale of illegal controlled substances.

**91.** Defendants used these COAs as tools to facilitate the sale of controlled substances. The COAs were presented as independent, scientific verification of the Products' legality, but in reality, they were false certifications meant to conceal the unlawful nature of the Products and enable Defendants to continue profiting from the sale of illegal substances.

**92.** Defendants' knowing and intentional misrepresentations through false labeling and fraudulent COAs constitute active participation in the illegal drug trade under the Arkansas Drug Dealer Liability Act. By deceiving consumers into purchasing controlled substances under the guise of legal hemp products, Defendants violated both federal and state drug laws.

**93.** As a direct and proximate result of Defendants' participation in the sale of controlled substances, Plaintiff and the Class were exposed to potential criminal liability and

suffered economic damages by purchasing Products that were illegal and therefore worthless. Defendants' actions placed Plaintiff and the Class at significant risk of criminal prosecution for possession of controlled substances and other legal consequences.

**94.** Plaintiff and the Class seek all remedies available under Ark. Code Ann. § 16-124-103, including compensatory damages, restitution for the unlawful profits Defendants earned from the sale of controlled substances, and any other relief deemed appropriate by the Court.

**COUNT II - BREACHES OF EXPRESS WARRANTY, IMPLIED WARRANTY OF MERCHANTABILITY**

**95.** Plaintiff and Class members re-allege and incorporate by reference paragraphs 1 through 78 as though fully set forth herein.

**96.** Manufacturing Defendants, Lab Defendants, and Retail Defendant expressly warranted, through their product labels, marketing materials, and accompanying Certificates of Analysis (COAs), that the Products sold to Plaintiff and the Class were legal, safe, and compliant with all applicable federal and state regulations.

**97.** Each product purchased by Plaintiff and the Class contained labels stating various phrases implying that the Products complied with the legal threshold of delta-9 THC, such as "THC Compliant" or "Less than 0.3% THC." These variations in phrasing conveyed the same essential message—that the Products were lawful under the Hemp Farming Act of 2018 and the Arkansas Hemp Production Act of 2021. The inclusion of QR codes and links to COAs further reinforced the message that the Products were compliant with THC limits set by federal and state laws.

**98.** The COAs provided by Lab Defendants, which were accessible via the QR codes and links on the product labels, were intended to serve as independent verification of the Products' legality. However, these COAs were fraudulent and falsely represented that the Products complied

with the legal limit of 0.3% delta-9 THC, when in fact, the Products contained illegal concentrations far above the threshold, making them controlled substances.

**99.** Defendants made affirmative misrepresentations about the legality and compliance of the Products through these labels and COAs. These misrepresentations were material to Plaintiff and the Class's decision to purchase the Products, as they were led to believe they were buying legal, safe, and compliant products.

**100.** By selling Products with illegal levels of delta-9 THC, Defendants breached the express warranties they made to Plaintiff and the Class regarding the legality and safety of the Products.

**101.** In addition to breaching express warranties, Defendants breached the implied warranty of merchantability under Ark. Code Ann. § 4-2-314. The implied warranty of merchantability requires that goods sold must be fit for the ordinary purposes for which such goods are used and comply with all legal standards. The Products sold by Defendants were not fit for their ordinary purposes because they were illegal controlled substances, rendering them unmerchantable.

**102.** Plaintiff and the Class reasonably relied on these express and implied warranties when purchasing the Products, believing that the Products were lawful, compliant, and safe for consumption. Had Plaintiff and the Class known the truth about the Products, including their illegal THC content, they would not have purchased them.

**103.** As a direct and proximate result of Defendants' breaches of express and implied warranties, Plaintiff and the Class have suffered economic losses, including the full purchase price of the Products, as well as the potential for criminal prosecution for possessing controlled substances.

**104.** Plaintiff and the Class seek all available remedies under Arkansas law, including compensatory damages, rescission of the purchase agreements, and restitution.

**COUNT III - FRAUD - VIOLATION OF ARKANSAS DECEPTIVE TRADE PRACTICES ACT**

**105.** Plaintiff and Class members re-allege and incorporate by reference paragraphs 1 through 78 as though fully set forth herein.

**106.** Defendants engaged in fraudulent misrepresentation and concealment by marketing and selling Products that contained illegal levels of delta-9 THC while falsely representing them as legal and compliant with federal and state law.

**107.** The Products, including Sharklato, Blue Dream, and Banana Runtz vape cartridges, were prominently labeled with varying phrases such as "Less than 0.3% THC," all of which were intended to deceive consumers into believing that the Products complied with federal and state regulations. Additionally, Manufacturer Defendants provided QR codes and links to COAs, which purported to independently verify the Products' legality.

**108.** The COAs, generated by Lab Defendants, were fraudulent and falsely stated that the Products contained legal levels of delta-9 THC. Defendants knew, or should have known, that the Products contained delta-9 THC levels far exceeding the 0.3% legal threshold, as independent testing revealed concentrations between 3.98% and 6.94%.

**109.** Plaintiff purchased the Product in reliance on the Defendants' representations that it was legal and compliant with federal and state laws, including the Arkansas Deceptive Trade Practices Act. Plaintiff specifically sought a legal delta-8 product, but instead received a product containing synthetic delta-9 THC in amounts exceeding the legal limit, rendering the Product illegal under federal law.

**110.** Defendants' representations and labeling misled Plaintiff into believing she was

purchasing a lawful product. Plaintiff would not have made the purchase had she known the true nature of the Product's contents. The Product was worth significantly less than what Plaintiff paid for it, and she would not have paid as much had Defendants not made false and misleading statements regarding the Product's legality.

**111.** Plaintiff and other consumers could not have reasonably avoided this injury, as they relied on the false labeling and representations made by Defendants. Defendants' conduct, including their failure to disclose the illegal THC content in the Product, was immoral, unethical, and substantially injurious to Plaintiff and the class. As a result of Defendants' fraudulent conduct, Plaintiff has suffered financial damages, including the full purchase price of the Product, as well as mental and emotional distress due to the involuntary purchase and use of an illegal substance.

**112.** Defendants acted with intent to deceive consumers, including Plaintiff and the Class, by knowingly misrepresenting the legality and safety of the Products. Defendants' actions were willful and deliberate, designed to increase profits at the expense of consumers' rights and safety.

**113.** Plaintiff and the Class reasonably relied on these material misrepresentations made by Defendants, believing that the Products were legal and compliant with applicable laws based on the express representations made on the product labels and in the COAs.

**114.** Defendants further concealed their fraudulent activities by creating a false appearance of independent verification through the use of fraudulent COAs. These fraudulent COAs were presented as scientific verification of the legality of the Products when, in fact, they were issued to perpetuate the sale of illegal substances.

**115.** Defendants' fraudulent conduct directly violated the Arkansas Deceptive Trade Practices Act (Ark. Code Ann. § 4-88-107), which prohibits deceptive, false, and misleading

advertising, as well as fraudulent concealment of material facts.

**116.** Defendants made no good faith effort to comply with federal or state law, intentionally using misleading product labels and COAs to misrepresent the legality of their Products. Defendants engaged in willful blindness, deliberately ignoring the illegality of their Products and the risks posed to consumers.

**117.** As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff and the Class suffered economic damages, including the full purchase price of the Products, as well as potential criminal liability for possession of controlled substances. Plaintiff and the Class would not have purchased these Products had they known the true facts about their illegality.

**118.** Plaintiff and the Class seek compensatory damages, punitive damages, restitution, and injunctive relief to prevent Defendants from continuing their deceptive and fraudulent practices, as provided under the Arkansas Deceptive Trade Practices Act.

**COUNT IV - UNJUST ENRICHMENT/DISGORGEMENT**

**119.** Plaintiff and Class members re-allege and incorporate by reference paragraphs 1 through 78 as though fully set forth herein.

**120.** Defendants, including Manufacturing Defendants, Lab Defendants, and Retail Defendant, have been unjustly enriched by profiting from the manufacture, distribution, and sale of Products that were fraudulently represented as legal and compliant with federal and state law. These Products were in fact illegal controlled substances because they contained delta-9 THC concentrations far exceeding the 0.3% legal threshold.

**121.** By selling these Products under false pretenses and failing to disclose their true illegal nature, Defendants received substantial financial benefits and profits from consumers, including Plaintiff and the Class, who were misled into purchasing the Products. Defendants

collected payments from consumers who believed they were purchasing lawful products based on false Certificates of Analysis (COAs) and misleading labels that misrepresented the THC content and compliance with state and federal regulations.

**122.** Defendants created and perpetuated a false narrative that their Products were compliant with the 2018 Hemp Farming Act and Arkansas Hemp Production Act of 2021. They used deceptive marketing and product labeling, including phrases such as "THC Compliant" or "Less than 0.3% THC," and QR codes linking to fraudulent COAs generated by Lab Defendants. These actions induced Plaintiff and the Class to purchase the Products under the belief they were legal and safe.

**123.** The Lab Defendants unjustly enriched themselves by issuing fraudulent COAs that falsely certified the Products as compliant with legal THC limits. These COAs were used to support the illegal sale and marketing of the Products, enabling Lab Defendants to charge fees for testing and certification services that were fundamentally fraudulent.

**124.** The Manufacturing Defendants further enriched themselves by misrepresenting the legality of the Products and distributing them to retailers, including the Retail Defendant, and directly to consumers. They profited by falsely advertising and labeling the Products as compliant with federal and state law, when in reality, they knew or should have known that the Products exceeded the legal delta-9 THC limit, rendering them illegal controlled substances.

**125.** The Retail Defendant also unjustly enriched itself by selling the Products directly to consumers in reliance on the fraudulent COAs and deceptive labeling, thereby profiting from the sale of illegal controlled substances without taking reasonable steps to verify the legality or safety of the Products it sold to Plaintiff and the Class.

**126.** As a direct result of Defendants' actions, Plaintiff and the Class were induced to purchase and pay for Products that were worthless because they were illegal controlled substances. Plaintiff and the Class would not have purchased these Products, or would have paid significantly less for them, had they known the truth about their illegal nature and non-compliance with legal THC limits.

**127.** Defendants' retention of the profits and benefits obtained from the sale of these Products is unjust because they were obtained through false and misleading representations regarding the Products' legality, THC content, and compliance with federal and state law. Allowing Defendants to retain these ill-gotten gains would violate fundamental principles of justice, equity, and good conscience.

**128.** Plaintiff and the Class are entitled to restitution and/or disgorgement of all revenue, profits, and benefits unjustly obtained by Defendants through their unlawful and fraudulent conduct, including all sums paid by Plaintiff and the Class for the illegal Products.

**129.** Plaintiff and the Class seek full restitution of the amounts paid for the Products and disgorgement of all profits Defendants derived from the sale of the Products, as well as any other relief the Court deems just and proper to prevent Defendants from being unjustly enriched by their illegal and fraudulent conduct.

**COUNT V - NEGLIGENCE**

**130.** Plaintiff and Class members re-allege and incorporate by reference paragraphs 1 through 78 as though fully set forth herein.

**131.** Manufacturing Defendants, Lab Defendants, and Retail Defendant each owed a duty of care to Plaintiff and the Class to ensure that the Products they manufactured, tested,

marketed, and sold were legal, safe, and compliant with all applicable federal and state laws, including the 2018 Hemp Farming Act and the Arkansas Hemp Production Act of 2021.

**132.** Manufacturing Defendants were responsible for producing, packaging, labeling, and marketing the Products directly to consumers, including Plaintiff and the Class. This included ensuring that the delta-9 THC content of their Products did not exceed the legal threshold of 0.3% by dry weight. They also owed a duty to ensure that any information provided to consumers, including COAs, was accurate and reflected compliance with legal standards. The Manufacturing Defendants breached their duty by:

**a.** Failing to adequately test their Products for delta-9 THC levels to ensure compliance with federal and state laws.

**b.** Using fraudulent COAs to falsely certify that their Products complied with the 0.3% legal limit for delta-9 THC, when in fact the Products contained illegal levels of delta-9 THC.

**c.** Failing to ensure that the labels, marketing materials, and product information provided to consumers were truthful and not misleading.

**d.** Failing to recall or otherwise take action to prevent the sale of illegal Products once the excessive THC content was discovered.

**133.** Lab Defendants were responsible for testing the Products and issuing Certificates of Analysis (COAs) to verify the delta-9 THC levels in the Products. Lab Defendants owed a duty to ensure that their testing procedures were accurate and reliable, and that the COAs they issued truthfully reflected the THC content of the Products. The Lab Defendants breached their duty by:

**a.** Falsely certifying that the Products contained legal levels of delta-9 THC when, in fact, they contained illegal concentrations far in excess of the 0.3% legal threshold.

**b.** Failing to conduct proper and accurate testing on the Products to determine their true THC content.

**c.** Engaging in a course of conduct that enabled the Manufacturing Defendants to falsely represent their Products as compliant with federal and state laws, thus facilitating the sale of illegal substances to consumers.

**134.** Retail Defendant (Cigarette Store LLC dba Smoker Friendly) was responsible for selling and marketing the Products to consumers in Arkansas and throughout the United States. The Retail Defendant owed a duty to ensure that the Products sold in their stores were legal and compliant with applicable laws, and that the information provided to consumers regarding the Products was truthful and not misleading. The Retail Defendant breached its duty by:

**a.** Failing to verify the accuracy of the COAs and product labels, despite knowing that these documents were central to consumers' understanding of the legality and safety of the Products.

**b.** Selling Products that contained illegal levels of delta-9 THC, despite marketing these Products as legal and compliant with federal and state laws.

**c.** Continuing to sell these Products after they knew the that the Products exceeded the 0.3% delta-9 THC limit, thereby exposing consumers to the risks of possessing and using illegal controlled substances.

**135.** As a direct and proximate result of Manufacturing Defendants', Lab Defendants', and Retail Defendant's negligence, Plaintiff and the Class purchased illegal and unsafe products, suffered economic harm, and were exposed to potential criminal liability for possessing controlled substances. Plaintiff and the Class also suffered physical, mental, and emotional harm from unknowingly consuming illegal substances and from the fear of potential legal consequences.

**136.** Plaintiff and the Class seek compensatory damages from all Defendants, jointly and severally, as well as any other relief deemed just and proper by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for judgment against Defendants as follows:

**i.** For an Order certifying this action as a class action pursuant to Rule 23 of the Arkansas Rules of Civil Procedure, appointing Plaintiff as class representative, and appointing Plaintiff's counsel as class counsel;

**ii.** For compensatory damages in an amount to be determined at trial;

**iii.** For restitution and disgorgement of Defendants' ill-gotten gains from the sale of the Products;

**iv.** For an award of statutory and punitive damages pursuant to the Arkansas Deceptive Trade Practices Act and any other applicable statutes or laws;

**v.** For equitable relief, including rescission of the sale and restitution of all monies paid by Plaintiff and the Class;

**vi.** For injunctive relief prohibiting Defendants from continuing the unlawful practices set forth herein, including both preliminary injunctive relief during the pendency of this action and permanent injunctive relief to prevent future harm to consumers;

**vii.** For pre-judgment and post-judgment interest at the highest rate allowed by law;

**viii.** For an award of costs, including reasonable attorneys' fees, expert fees, and other costs and expenses of this litigation; and

**ix.** For such other and further relief as the Court deems just and proper.

Respectfully submitted this 23rd day of October 2024.

By: /s/ *Melvin H. Dixon, Jr.*

Melvin H. Dixon, Jr., AL Bar No. 0574P17B

**DIXON, MORENO, & ASSOCIATES, P.L.L.C.**
4780 Wharf Pkwy, F-202
Orange Beach, AL, 36561
(251) 306-0402
Melvin@DMALawyers.com